Thank you and good afternoon everyone. We are, Judge Vannetwerpen, can you hear me? I can, Judge Fuentes, and I apologize for not being there. This is the second one I've missed with this rotten cold. You sound like you're under the weather, Judge Vannetwerpen. Well, hopefully my mental facilities are functioning properly. I'm sure they are. Judge Vannetwerpen and I want to welcome a colleague from the Sixth Circuit. As you may know, we are understaffed, under our allotment of judges, so we need all the help we can get today. Judge Eugene Seiler of the Sixth Circuit is with us, and we appreciate his sitting with the Third Circuit today. You're quite welcome. All right, Judge Vannetwerpen, I guess we're ready to go ahead? Yeah. Good. Let's begin. First case is Naranjo, United States v. Naranjo. Mr. Wolters, let me get your appearance. Mr. Epstein. Yes. May it please the Court, my name is Robert Epstein. I am here today on behalf of the appellant, Mr. Adolfo Naranjo. With the Court's permission, I'd like to reserve three minutes of my time for about a time. Thank you, Your Honor. The issue on this appeal is the invisibility of Mr. Naranjo's post-Miranda statements, where the Miranda warnings were only given after an hour and a half of custodial interrogation, in which Mr. Naranjo was handcuffed behind his back, placed on the floor on a foam mat, and questioned by multiple officers standing above him, and where there was no break in time between the pre-Miranda and post-Miranda statements, no change in officers, no change in setting. Didn't he go to the bathroom between times? Went to the bathroom, and from the evidence, that would be about a one or two minute break, it would appear. And that was it. Now, it's our position that the District Court, with all due respect to the District Court, got it wrong twice in this case. The first time, under the Supreme Court's decision in Elstad, and the second time, upon remand of this Court, to determine whether the Miranda violation in this case was deliberate. Now, we don't have to show the District Court got it wrong both times, but simply one of those two occasions. Now, unless the Court corrects otherwise, I'd begin with the deliberateness issue. Is the case closer to Elstad, or the Siebert in Elstad? It's much closer to Siebert, because Elstad was a case where you had an inadvertent interrogation that lasted no more than two questions from the police officers. Here we have an hour and a half of uninterrupted interrogation, where Mr. Naranjo was handcuffed behind his back, where he was taken at gunpoint from the car by eight to ten officers pointing guns at him. This is a completely different situation in Elstad. This is exactly like Siebert, where you have a two-stage interrogation, one following immediately upon the other. At what point would you say there was a custodial circumstance where Miranda warnings had to be administered? At the very outset, here. And there's no dispute about that from the government. Once they took him out of the car, once they handcuffed him, searched him, took his wallet, his keys, his cash, did not give them back to him, brought him inside the house, placed him down on the floor on a foam mat, and started questioning him, those warnings should have been given from the very outset. And there's no dispute about that from the government. All right, so all the statements made prior to the second step were properly excluded. That's correct, Your Honor. And all the statements, the finish of the confession, which came post-Miranda, which was only about two minutes long, according to the officer, should have been suppressed as well. Now, there's two fundamental problems with the district court's determination as to deliberateness. One is that the district court didn't take into account the second officer who was present for the entire interrogation. That was Agent Fleener. The second problem is that the district court didn't analyze Rogers' testimony under an objective standard. Let me start out with Fleener, because I think this is dispositive in and of itself. Fleener was present the entire time, according to Rogers' testimony. He was the only one that was present the whole time. Rogers and Fleener were present the entire time. That can be found on page 57 and 308 of the appendix and 332 as well. Fleener was the one, according to Rogers, who went on at length at the beginning of the interview with Mr. Miranda. It was clear. That can be found on page 58 of the appendix. He's the one who explained to Miranda how investigations work, how they're looking for big fish, they think he's a little fish. He's the one who said that if you play ball with us, if you're straight with us, we'll be straight with you. And most importantly and fundamentally, he's the one who gave the inadequate warnings in this case, grossly inadequate. He's the one who told Mr. Miranda, now look, you don't have to talk to us, you have a right to remain silent, but we'd like you to talk with us. But he didn't finish off the Miranda ones. He didn't give the warnings that you have to give a right to an attorney to be present. You actually had him on the witness stand. My impression is you let him go. You didn't ask him the tough question. Well, we asked him facts that give a district court an objective basis to make a determination. Fleener testifies. First of all, the appendix cites for Fleener giving the inadequate warnings of 58, 116, and 338. So we established that through Rogers and through Fleener, that Fleener is the one who gave the inadequate warnings at the outset. Then we established from Fleener that he knows that you have to give Miranda warnings at the outset of detention. That's at 341. Did the district court find that Officer Rogers acted in good faith and not Miranda-izing your claim? Yes, he did. And I'll get to that in a moment. But if I may, I'd like to finish off on Fleener. Fleener, the government, now the burden here should be on the government. That's United States v. Ali, the case we cite both in our brief and in the 28th Jail Act. Our circuit has never made such a holding. Right. But this court hasn't addressed that issue yet. But as the 8th Circuit and Ali found, that's completely consistent with the Supreme Court jurisprudence that it's always the burden of proof on the government to establish the admissibility of a confession. And it also goes with the party who has the evidence most available to it should bear the burden. So those are good reasons why the court and Ali did. Also, I would point to the Supreme Court jurisprudence on good faith under Leon. And there it's always the government's burden to establish good faith. And that's reviewed de novo by this court. And the same should hold here. Now, what did the government do with Fleener? They asked him one question. They asked Fleener at page 342 of the appendix. Well, since defense counsel didn't ask it, I'll ask you. Did you ever instruct Rogers or agree with him to conduct some kind of two-step process to trick a statement out of him? And Fleener says no. But that doesn't answer the fundamental question. That just means there wasn't a conspiracy. There wasn't collusion. Fleener certainly could have, on his own, had this practice of not giving full warnings. And we have no explanation from Fleener to the contrary. Was he a superior to Rogers? Yes, he was an agent with more experience. He was a more senior agent conducting the interrogation. And Rogers, at the outset of the interrogation, deferred to Fleener. It was Fleener who did all this back and forth with Naranjo at the outset. So why didn't Fleener give the full warnings? And on this record, we have no answer from Fleener. But under the objective facts and circumstance, why on earth wouldn't he have given the warnings? It's obvious that he's in custody. He says that he's been trained to give the warnings upon the start of detention. And we have no explanation from him. So the government fails their burden with respect to Fleener. And the government can simply point to the rookie, Rogers, and says, he's the one we're going with. We're going to forget about the other officer who was conducting this interrogation. The interrogation was conducted almost entirely by Rogers, wasn't it? No. What Rogers testified to was, at the outset, it was Fleener who was doing all of the explaining to Mr. Naranjo. Now, once Mr. Naranjo started talking, then perhaps it was Rogers who took over most of the questioning. But it was Fleener who did the most important thing here, and that was to give the inadequate warnings. There's no explanation as to why. Wasn't Naranjo told that you don't have to answer any questions initially before the interrogation began? He was, but he wasn't told that he had a right to an attorney to be present with him. And let's look at the circumstances when Fleener is the one who told him that. Let's look at the circumstances. He's told Mr. Naranjo that he's not under arrest, quote-unquote, at this point. And that could be found in the appendix at page 56, which is a critical point. Because he's told he's not under arrest at this point, clearly implying that his arrest could be very soon, fourth time. He has his wallet, his keys, his $900 in cash taken from him. It's never returned to him. So at this point, what choice does he have but to talk? And the agent is telling him, things will go better for you if you do talk. I want you to talk. You don't have to, but you want to. The Supreme Court recognized the miranda. That's psychologically coercive. That will get somebody to talk even if they don't want to. What was this? Should the court determine whether or not this is used in a calculated way? Didn't the eight members of the court have a pretty tough time in formulating a test? Yes, Your Honor. And Justice Kennedy's opinion, which establishes the deliberateness test, doesn't, unfortunately, give the lower courts any guidance. But what the Ninth Circuit and Eighth Circuit have said on this is that, look, there's no way a police officer is going to come in in the wake of Siebert and just admit that he deliberately did this. So what we have to do is to look at all the objective facts and circumstances and evaluate this objectively, which is completely consistent with what the Supreme Court in this court has said under the good faith exception in Leon, which is the other area of the law where we look at the officer's intent. And what this court has said is we must look objectively. And you can look, for instance, at United States v. Zimmerman on this, 277F3426. We're going to evaluate the officer's testimony of good faith or lack of deliberateness objectively. And we're going to hold officers to a reasonable understanding of the law. Now, one officer, and now I'm looking specifically at Rodgers, who testified that he made a mistake, that he thought you only give Miranda warnings upon arrest, not upon custody. What officer is reasonably going to believe that? He himself admitted he had just been trained within the past year. Is this a question of law or a question of fact? It's a question of law. The Supreme Court in this court has always said that the issue of good faith under Leon, and this is a comparable issue, is an issue of law that the circuit courts were viewed to know about. This court so said in the United States v. Malloy. Okay, on that point, on the conclusion of the district court that there was no deliberate conduct on the part of the officers, won't you review that for abuse of discretion? Or would you say that we now look at that as a matter of law? That should be reviewed as a matter of law, Your Honor. That would be United States v. Blackburn. The Eighth Circuit has recently said that. That's at 422 after 658. As I said, that would be completely consistent with how this court has dealt with issues of good faith under Leon. About the judge's finding at step two that the statements were made voluntarily. Yes, with respect to that, the court would submit error because the court failed to take into account all of the facts and circumstances of the course of police conduct here. There's nothing. The district court simply fails to address that. And as Judge Becker stated in the last decision, which we cite in our Rule 28 J letter, the important facts to consider there are who initiated the interrogation. And obviously here it was the police. The matter in which the initial interrogation was conducted. And here we have an hour and a half of very coercive type of interrogation. Whether there was any break in between the pre-Miranda and post-Miranda statements, which we have none here. Whether there are different officers involved, which there is not. And whether or not there's a change in setting, which there is not. So when you look at all of the objective facts and circumstances here, you can't help but come to the conclusion that the second statement was involuntary. And we've cited no less than five cases in our Rule 28 J letter to the court. The Eighth Circuit's decision in Carter. We cite in our brief the Eighth Circuit's decision in Aguilar. Three federal district court decisions that the government did not take appeals of. All of which are the exact same as this case. Where you have no break in between. No change in officers. No change in setting. And in every one of those cases, the second statement, the post-Miranda statement, is found to be involuntary. Would you agree that it's Kennedy's, Justice Kennedy's concurrence, which really controls the use of the calculated weight test? I would agree that it's Justice Kennedy's concurrence that sets the deliberateness test. And then if we don't meet the deliberateness test, then of course we go to ELSTAT to evaluate whether the second statement is voluntary in light of all the facts and circumstances. But again, Justice Kennedy did not tell us how do we go about evaluating deliberateness. And I think we need to look at the Supreme Court's jurisprudence on the good faith exception under Leon to realize how that should be gone about, which is to look at all the objective facts and circumstances and what a reasonable officer would understand the law to be. Thank you, Mr. Epstein. I'll get you back on rebuttal. Thank you. Mr. Troyer. Good afternoon. May I please record David Troyer, Assistant U.S. Attorney for the Government. This was an uncoerced voluntary statement to customs agents given by this appellant. It was done in two parts to the agents. The first one was admittedly without Miranda warnings, and the government agreed to the voluntary suppression of that statement, that part of the statement. It's only the second part of the statement that's at issue here, and it's reflected in just six of the 102 pages of lines of notes taken by Special Agent Rogers. Could you tackle, Mr. Troyer, a threshold question of the burden of proof? Who has the burden? Mr. Epstein says you should have the burden. You have all the information necessary to go forward. Generally speaking, the government does have the burden to at least establish the admissibility of a statement. I think it's unclear, candidly, the burden in terms of showing a deliberate two-step process because that really didn't exist before this Missouri v. Siebert case came out, which is an extremely narrow decision. Even assuming we have the burden here, there's no clear error involved, which is the standard for the factual determinations, and this is purely a factual determination made by the district court, who not only heard the testimony of Agent Rogers and considered that but considered the testimony of all of them. This is Agent Rogers, Agent Stever, and Agent Fleener. It was Rogers who was present the entire time and is, I believe, the only one present the entire time during this conversation. It was Rogers who repeatedly advised the defendant of his right to be silent and not speak with the agents, even before Miranda was given, even before the first statement was taken. If I could just correct a couple of things. The defendant was on a couch, on a sofa, on an enclosed porch of a row home where he was subject to questioning. He was not on the floor. He was handcuffed, though, was he not? He was handcuffed. He was, Judge Seiler, that's correct. Even as to the handcuffing, the agent testified repeatedly that he had explained to Mr. Naranjo that he was handcuffed and that that was being done for the agent's safety, and he was asked if that was all right with him, and Mr. Naranjo stated that it was, not that the agents needed his permission, but he stated that it was, and he did not have a problem with remaining handcuffed during the questioning. Mr. Epstein says that many of those objective factors that we're supposed to look at really weigh in his favor. When you take a look at him, I mean, to me this is a close case. I think he might be right, certainly with regard to the setting. Both interrogations took place in the same room. The continuity of the officers doing the interrogation, the timing, and so forth, all of the factors that we're supposed to look at do seem to weigh in favor of his client's position that it was a deliberate two-step procedure. Well, I would respectfully, although some of those factors, I think that those factors in this case would not outweigh the main factor, which is that the first statement was taken that there was no deliberate approach. That's a totally separate issue. The deliberate approach was the only thing this was demanded for. I stood here before a different panel a year ago, and this is the only question that remained with the court. If there was going to be an objective test and if this court thought that this case violated Siebert, it could have reversed it before. It was only sent back because Siebert hadn't come out yet when the first suppression hearing was done, and it was sent back for the specific question of was there a deliberate two-step process. And this court, in the first Naranjo opinion, stated that if there is no deliberate two-step process, then Elstad applies. That's the law of the case because the prior panel has so found. Yes, yes, Your Honor. It is the law of the case. But to get there, but to get to that ultimate conclusion, was it deliberate or not? What are we supposed to look at? Well, I think we look at all the factors here. Some of the factors, I think, the most important factors are that, unlike any of the other cases, unlike Siebert, unlike Ali, like Williams, there is no attempt on the part of this rookie agent to get the defendant to repeat his statement. He doesn't try to trick him and have him make a statement pre-Miranda and then say, okay, now I'm reading your Miranda rights. Is everything you said true? To the contrary, he makes no attempt to do that. He simply finishes or follows along and obtains some important information, but very little information. So he wasn't confronted with his pre-Miranda statements, is what you're saying. That's correct. He was not confronted with his pre-Miranda statements. And, in fact, it was the defendant who initiated the conversation upon the quote-unquote bathroom break that was taken, and it was during this same break that Agent Rogers, who was under, of course, the mistaken impression that one needed to be under arrest to be in custody, it was Agent Rogers who then had talked to a supervisor at that point and was told that this man around her was going to be arrested and then decided to read her rights. And, in fact, Agent Rogers, when Naranjo came back from the bathroom break, the testimony is that Naranjo said he wanted to continue to talk to the agents, and Agent Rogers stopped Naranjo and said, no, before you say anything else, I have to read you your rights. Read him his rights and presented him with a written acknowledgment and waiver, and Naranjo signed the written acknowledgment. And, again, Agent Rogers, being new, testified he wasn't even quite paying attention and didn't get him to sign the second half of the form, but testified nevertheless that Mr. Naranjo, which the court credited, that Mr. Naranjo agreed to waive his rights and did waive those rights, and the court found that. I think the court's findings are... Your opposing counsel suggests that Fleener was the supervising investigator here and he had more responsibilities, but you're saying that Rogers called some other supervisor. Judge Tyler, I must tell you I am extremely surprised to hear those statements because this is the first time that that has been argued by the appellant, and they've had two shots at it now in suppression hearings. They've had two suppression hearings. There's never a claim that I'm aware of that it was Agent Fleener. Agent Fleener is not the supervisor, although he, of course, was senior in status to Rogers. He was not the supervisor of Special Agent Rogers. It was Rogers who conducted the inquiry. It was Rogers who controlled the situation, and Rogers was the only person present during the entire time that this was done. Let me follow up on that question. Wasn't Fleener present during most of the interrogation by Rogers? The point that Mr. Epstein was making was that Fleener was a more veteran officer and certainly knew that Miranda warnings were required and should have, in fact, issued Miranda warnings earlier. Well, one, a part of that is an assumption, of course, because that was never explored, although the defense had, the appellant had ample opportunity to explore that. In fact, as counsel pointed out, I had to ask the question at the suppression hearing, the pregnant question that was pending, as to whether he was even aware of any deliberate two-step process or whether one was employed, and all of the agents testified they never heard of such a thing. They were not only did not employ one, they not only did not employ one. Does that control the issue of the subjective inquiry of the agents? Are there other tests that you also have to consider? Actually, I believe it is a subjective test, and what I think the appellant is asking this court to do is to do what the Supreme Court itself refused to do, which is employ or create or craft out some objective test. This is really something for the finder of fact, which is the district court in this case. It is the district court's obligation to hear the testimony, the weight and credibility of the witnesses, which it did in this case, and to reach a conclusion, which it did in this case, as to which witnesses were credible and how to credit their testimony. They said in the prior opinion that the district court did not articulate sufficient findings to allow them to review this and write it for the cyber. Were any other factual findings made as to surrounding circumstances or other things that might be relevant? Yes, and actually, of course, again, a year ago, I argued that there was, even at that time, even though the cyber hadn't come out, that there was already ample evidence in the record to support the affirmance, because at that point, the district court made a number of consistent findings, which is that the statements were voluntary, that Special Agent Rodgers had simply made a mistake in not issuing the Miranda warnings at an earlier time. He made findings that Mr. Naranjo wanted to talk, that Mr. Naranjo was cooperative. That was a testimony. Those were the findings of the district court, and there were consistent findings, again, the second time upon remand. Didn't the district court on remand basically just inquire the agents and then make a finding that this was not part of a designed pattern or practice or whatever terminology you want to use? Well, that almost implies that the hearing was brief, and it was anything but brief. It was a long hearing, but the only inquiry, the only question was whether there was a deliberate two-step process. All of the evidence pointed against that, and the district court properly concluded that there was no deliberate two-step process employed. The Siebert case is an extremely limited exception to the general rule, which is ELSTAT in this case. Let me, since we have a little time, let me get your take on the statement in Williams from the case from the Ninth Circuit. The statement, I believe it's page 31, states, Once a law enforcement officer has detained a suspect and subjects him to interrogation, as was the case in Siebert and in Williams, there is rarely, if ever, a legitimate reason to delay giving him a random warnings until after the suspect has confessed. And if that were applied here, there would be no excuse for what happened. Well, one, I think that may be a good general proposition as well, but two, I think that shows why this court should not do what the Ninth Circuit did, which appears to be crafting out an object of test, which again is precisely what Justice Kennedy, in his concurring opinion, which this court has essentially adopted the first time around, what Justice Kennedy said should not happen and should, what he was concerned about. The Williams case is distinguished as is Ali. There was no finding by the district court in Williams or Ali that there was no deliberate two-step process. In this case, we do have a finding of no deliberate two-step process. There was repetition of the pre-Miranda statements in both of those cases, which does not exist here. There is, the defendants in those cases were not told that they did not have to speak to the agent, which the defendant in this case, the appellant in this case, was told. And more so, there are some other distinctions as well. Of course, in Ali, the defendant was tricked by a false fingerprint story, which did not happen in this case. There was no evidence of coercion in that sense or trickery. In Williams, there were actually adverse credibility findings against the agents in the suppression hearing in that case, and there were no such findings in this case. But, yes, I think the appellant does, I'm sure the appellant does want this court to try to get a one-size-fits-all type of objective test to employ here. But that really cuts against what Justice Kennedy said, and if I may, Justice Kennedy specifically said, In my view, this test cuts too broadly. Miranda's clarity is one of its strengths, and the multi-factor test that applies to every two-stage interrogation may serve to undermine that clarity. I would apply a narrower test applicable only in the infrequent case, such as we have here, in which the two-step interrogation technique was used in a calculated way to undermine the Miranda warning. It concludes by saying, The admissibility of post-warning statements should continue to be governed by the principles of ELSTAT unless the deliberate two-step strategy was employed. If the deliberate two-step strategy has been used, post-warning statements that are related to the substance of pre-warning statements must be excluded unless curative measures are taken before the post-warning statement is made. The court recognized that statement and that analysis in its first opinion in this case. On the voluntariness of the statement, I was struck by the amount of time that Naranjo was subjected to interrogation, which is well over an hour. I understand it was close to two hours, if I remember correctly. It was a long period, and as I stated, the agent took about four pages of notes. I think, if anything, that goes more to the voluntariness of the statement. But isn't it odd to have a suspect handcuffed in his own residence for close to two hours to be interrogated as opposed to being taken down typically to the station house where these interrogations are normally conducted? Well, again, sitting from here, that may sound unusual. In this particular case, as the district court heard the testimony, this defendant was very cooperative. He was even very nice, quote-unquote, as the agent said. Everything was going very well, so there was no reason to change the circumstances. The defendant, the appellant, seemed to be satisfied with the circumstances. The agents were satisfied with the circumstances. There didn't seem to be any reason to change them at that time. And there was never any complaint by the appellant that he was being mistreated. There was never any question that they wanted to continue talking. And, in fact, when they took the break that immediately preceded the rendering of the warnings, again, it was the appellant who wanted to continue talking, and it was the agent who stopped him in order to give him the warnings that the agent then felt needed to be given. Any further questions? Chief Anatole? No, sir. Okay. Thank you. Thank you very much. Mr. Epstein? Thank you. Perhaps one of the most important facts on the voluntariness point is that when the circumstances were changed, when Agent Rogers tried to talk to Mr. Naranjo a little while later, after Mr. Naranjo had been booked and fingerprinted, Mr. Naranjo said no. Once there was a break in the stream of events, once he had a chance to evaluate things, he wouldn't talk anymore, clearly showing what would have happened if they had done what they were supposed to do in this case in the first place. Now, this is extremely important, because counsel says that Naranjo 1 decided the Elstad issue. The prior panel didn't decide that issue. The prior panel said, we're going to send it back to determine if it's delivered or not. If it's not delivered, then Elstad will control. Now, they don't necessarily win on the Elstad. Quite the opposite. Under these facts and circumstances, they lose under Elstad, and the prior panel simply didn't reach the issue. And that can be found on page 232 of the prior panel's decision in this case. The issue has just been left open for this court to resolve if this court finds Judge Giles was correct on delivering this issue. But that issue is very much in play here. Was this coercive questioning? Excuse me? Was this coercive questioning under Elstad? Absolutely. And the seminal case on that is the companion case to Miranda, and that is Westover, which the court in Elstad cites for the proposition that if you have coercive questioning, then there has to be a break in the stream of events or the post-Miranda statement gets suppressed. And what happened in Westover is simply prolonged custodial interrogation like we have here. There wasn't even any evidence in Westover that the defendant was handcuffed like Mr. Naranjo was here. And in that case, the defendant was taken into custody by local Kansas City police officers, interrogated for a couple hours that night, interrogated a couple hours the next morning, and then the FBI takes over. And he confesses to a separate crime that the FBI was investigating. And the Supreme Court said, from the defendant's point of view, this is just one continuous interrogation, and the coercion from the prolonged custodial interrogation carries over to the FBI's questioning, even though the FBI gave Miranda the outside of their questioning. That was a much longer period of time, though, you're saying. Four hours at least? Compared to two. And I don't think the issue, the coerciveness, changes on the basis of that. Then we have the Eighth Circuit's decision in Aguilar, Sotomayor, it's the exact same as here. You have two hours of interrogation while handcuffed, and the court there said involuntary, and said that therefore the Westover break-in stream of events decision applies. And we don't have the break-in stream here. Now even if it's not wholly involuntary for purposes of due process, then we still have to evaluate all the facts and circumstances to evaluate that second statement. The government hasn't come forward with a single case that supports their position, not one. We have six cases that we've cited, all directly on point. And the same resolution should apply here. If I may just finish a couple of things on the deliberateness issue. The government says that it wasn't Fleener who gave the inadequate warnings initially, it was Rogers, and Fleener wasn't even really there. Well, on page 57 of the appendix, Rogers testified, and he was asked, was there any other person with you? He says, yes, Fleener was with me. At 58, he says, Fleener went on for a while, just letting him know that, letting him know that this was an investigation, that we want to know if he's willing to speak to us, this is Fleener, and answer some questions, that he doesn't have to answer our questions, and that he can remain silent if he wants to. It's Fleener who gave the inadequate warnings in this case, not Rogers. Did you argue in the district court that Fleener should have been responsible for administering the warnings? We argued in the district court, and on this appeal, that given that it was a multiple officer interrogation, you have to look at all the facts and circumstances, all the officers present. Certainly, Fleener, who's the one who's present the entire time, Fleener himself, at page 332 of the appendix, says that he advised Rogers, I mean, Mr. Murano, that he didn't have to speak. Mr. Epstein, Mr. Troy, thank you very much for your helpful argument. We'll take the case under review. Thank you.